UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
UNITED STATES OF AMERICA,            :

         -v.-                        :

ANTHONY V. PILIERO and JOSEPH S.     :     SI 09-CR-91 (NRB)
BARONE,

         Defendants.                 :

                                     :

------------------------------------ X


## MEMORANDUM OF LAW IN SUPPORT OF
## ANTHONY V. PILIERO'S PRE-TRIAL MOTIONS

DECHERT LLP
Edward A. McDonald (EM 4411)
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500

Attorneys for Defendants

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................1

ARGUMENT.....................................................................................................3

POINT I - Piliero Is Entitled To Early Disclosure Of
    Critical Brady And Giglio Material.....................................................3

A.    Barone's Statements To The Investigators ...........................................4

B.    Statements Made By Barone's Counsel..................................................5

C.    The Government's Statements About Barone........................................6

POINT II - Pursuant To Fed. R. Crim. P. 14, The Court
    Should Sever Piliero's Trial From His Co-Defendant's.......................7

A.    Introduction Of Rule 404(b) Evidence Against Barone At A Joint
    Trial Will Unduly Prejudice Piliero.....................................................8

B.    Piliero Is Entitled To Present The Exculpatory Testimony Of Barone ................11

C.    Piliero Should Be Provided With Evidence Of Any Statements
    That Barone Made Incriminating Himself...........................................14

POINT III - Piliero Is Entitled To Law Enforcement Agents' Handwritten Notes And
    Formal Reports Concerning Their Interview With Him.......................15

POINT IV - Pursuant To Fed. R. Crim. P. 7(f), Piliero Is
    Entitled To A Bill Of Particulars........................................................17

POINT V - Piliero Requests Permission To Make Additional Motions
    That May Become Necessary As A Result Of Further Discovery.......................19

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

United States v. Bortnovsky,
820 F.2d 572 (2d Cir. 1987) ......................................................................17

United States v. Boscia,
573 F.2d 827 (3d Cir. 1978) ........................................................................7

United States v. Bourjaily,
483 U.S. 171 (1987) ....................................................................................3

Brady v. Maryland,
373 U.S. 83 (1963) ........................................................................... 1, 3, 4, 5

Bruton v. United States,
391 U.S. 123 (1968) ..............................................................................14, 15

United States v. Cannone,
528 F. 2d 296 (2d Cir. 1975) ......................................................................4

Doe v. United States,
829 F. Supp. 59 (S.D.N.Y. 1993) .............................................................16

United States v. Echeles,
352 F.2d 892 (7th Cir. 1965) ....................................................................12

United States v. Figueroa,
618 F.2d 934 (2d Cir. 1980) .....................................................................10

United States v. Finkelstein,
526 F.2d 517 (2d Cir. 1975) .....................................................................12

United States v. Friedman,
854 F.2d 535 (2d Cir. 1988) .......................................................................8

Giglio v. United States,
405 U.S. 150 (1972) ........................................................................... 1, 3, 4, 7

United States v. Gilbert,
504 F. Supp. 565 (S.D.N.Y. 1980) ......................................................12, 13

United States v. Gleason,
259 F. Supp. 282 (S.D.N.Y. 1966) ..........................................11, 12, 13, 14

# TABLE OF AUTHORITIES

United States v. Ionia Mgmt. S.A.,
  No. 3:07CR134, 2007 WL 2298570 (D. Conn. Aug. 3, 2007) .......................................16

United States v. Kofsky,
  No. 06-392, 2007 WL 1825183 (E.D. Pa. June 22, 2007)..............................................16

Opper v. United States,
  348 U.S. 84 (1954) .........................................................................................................7

United States v. Romero,
  249 F.2d 371 (2d Cir. 1957)..........................................................................................13

United States v. Sherman,
  426 F. Supp 85 (S.D.N.Y. 1976)...................................................................................11

United States v. Shuford,
  454 F.2d 772 (4th Cir. 1971).........................................................................................12

United States v. Stein,
  424 F. Supp. 2d 720 (S.D.N.Y. 2006) .....................................................................15, 16

United States v. Villanueva Madrid,
  302 F. Supp. 2d 187 (S.D.N.Y. 2003) .............................................................................8

United States v. Wilson,
  11 F.3d 346 (2d Cir. 1993)..............................................................................12, 13, 14

Zafiro v. United States,
  506 U.S. 534 (1993)...............................................................................................8, 10, 11

## STATUTES

Fed. R. Crim. P. 7(f)............................................................................................................17

Fed. R. Crim. P. 7(f) Advisory Committee Notes.............................................................17

Fed. R. Crim. P. 14...............................................................................7, 8, 11, 14, 16

Fed. R. Crim. P. 16(a)(1)(B)(ii) ........................................................................................16

Fed. R. Evid. 404(b) ............................................................................................7, 8, 10

Fed. R. Evid. 801(d)(2)(E)...........................................................................................2, 6

Fed. R. Evid. 806 .........................................................................................................3, 6

# TABLE OF AUTHORITIES

18 U.S.C. § 1958 .................................................................................................................1

## DISTRICT COURT LOCAL RULES

Local Rules of Criminal Procedure, United States District Court, District of Connecticut,
Appx. §A(10)-(11) and §D (Dec. 1, 2009) ......................................................................4

Local Rules of Practice, United States District Court, Northern District of New York,
Section XI. Criminal Procedure, §§14.1(b)(2), 14.1(d)(1) ................................................4

## MEMORANDUM OF LAW

### INTRODUCTION

Anthony V. Piliero ("Piliero") is charged along with Joseph Barone in a two count indictment with violating and conspiring to violate the murder for hire statue, 18 U.S.C. § 1958. Through his attorneys, Dechert LLP, he now moves for (1) the prompt disclosure of <u>Brady</u> and <u>Giglio</u> material, (2) severance of his trial from that of his co-defendant, (3) the production of investigators' handwritten notes and formal reports concerning their interview of Piliero, (4) a bill of particulars, and (5) permission to make additional necessary motions in the future.

In the affirmation that we have submitted in support of our motions, we provide relevant background information, which we will not repeat here. Nonetheless, it remains a mystery to us how the government intends to prove, as required by 18 U.S.C. § 1958, that Piliero, with the intent that the "Intended Victim" be murdered, promised or agreed that someone would be paid as consideration for committing that murder. It is true that Piliero had an insurance policy on the life of the individual whom Barone apparently discussed killing with an informant named ███████████, it is also true that Piliero knew Barone. However, unless there is a change in circumstances, Barone will not be testifying against Piliero. Moreover, other than ██████, we are unaware that any other person has knowledge of what Barone appears to be proposing in his taped conversations with ██████. While ██████ might be called by the government, he could only testify about Barone; he neither met nor spoke to Piliero and cannot provide any incriminating evidence against him.

Thus, it appears that the prosecution will have to rely on the tape recording of the conversation that Barone made with Piliero. However, in that conversation, both

1

Piliero and Barone made it clear that Piliero did not intentionally participate in any plan to pay someone to commit a murder. They said the following:

> Barone: Thank you Tony, we should know better. Eh, exactly we should know better. Fuckin', I, I punch myself in the fuckin' head. Like you know, like, I know <u>we fuck around and we talk, you know what I mean, and we, we say some, we don't, we don't</u> -
>
> Piliero: <u>We don't mean it.</u>
>
> Barone: <u>We don't mean it.</u>
>
> Piliero: <u>I know, that's the bottom, and that's the bottom line of the whole thing.</u>
>
> Barone: Right, yeah. But, because <u>I took it that extra step</u> and then you know when I, when I told that maybe he'll know you, said yeah, you know whatever I was like, I didn't really you understand. But now, I'm in trouble. Well, I was in trouble (UI) now. (emphasis added). (Exhibit 3, at 18-19).

It is also significant that since Barone's arrest in January 2009, both Barone and his attorney have made it clear that Piliero did not participate in a murder for hire plot. Barone told the investigators that "as to killing the Connecticut guy, Piliero never told Barone to do it, and Piliero also never told him not to do it." Barone's attorney stated in court with respect to Piliero, "It is clear in that Barone truthfully told them [the investigators] well, he didn't ask me to do it and he didn't tell me to do it and he didn't tell me not to do it." (Exhibit 4).

Finally, the prosecution might seek pursuant to Fed. R. Evid. 801(d)(2)(E) to introduce against Piliero statements that Barone made to ████ to the effect that the person who had put out the contract on the "Intended Victim" had an insurance policy on his life. While that part of the statement about "putting out a contract" is a complete fabrication, the statement would apparently implicate Piliero. We would vigorously

2

resist the introduction of that statement against Piliero since in light of the absence of evidence against Piliero, the prosecution could not prove by a preponderance of the evidence that he was a member of any conspiracy with Barone and therefore, Barone's statements could not be admitted against Piliero. <u>See</u> <u>United States v. Bourjaily</u>, 483 U.S. 171 (1987). Moreover, even if Barone's out of court statements potentially implicating Piliero were to be admitted, their probative value would be negligible. Indeed, we could impeach his tape-recorded words pursuant to Fed. R. Evid. 806 by showing that Barone and his attorney (as his representative) made statements that exonerated Piliero and were otherwise inconsistent with what he told ██████.

     In sum, we are at a loss to understand what the case against Piliero will be. In such circumstances, especially where his co-defendant has exonerated him, it is particularly important that Piliero promptly be provided critical exculpatory evidence and other relevant statements and information. We anticipate that the government will say that they have already given us discovery. They have, but while some of that material is helpful, much of it serves to show that we need more in order to prepare in a meaningful way for trial – and perhaps to persuade the United States Attorney's Office that they are prosecuting an innocent man.

## ARGUMENT

## POINT I

### PILIERO IS ENTITLED TO EARLY DISCLOSURE OF CRITICAL BRADY AND GIGLIO MATERIAL

     The court is well aware that under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and their progeny, the government is required to disclose evidence that is materially favorable to the defense. We recognize

3

that regulation of the nature and timing of such disclosures lies within the discretion of the district court. See United States v. Cannone, 528 F.2d 296, 298 (2d Cir. 1975). We also recognize that in most cases in this district, upon representation of the prosecutor that the necessary disclosures will be made in advance of trial, judges do not require the prompt disclosure of such material. Compare with local rules for the District of Connecticut (all Brady and Giglio material must be produced within 14 days after arraignment, Local Rules of Criminal Procedure, United States District Court, District of Connecticut, Appx. §A(10)-(11) and §D (Dec. 1, 2009)), and the Northern District of New York (all Brady material must be produced within 14 days after arraignment, Local Rules of Practice, United States District Court, Northern District of New York, Section XI. Criminal Procedure, §§14.1(b)(2), 14.1(d)(1)). .

We believe that this case is different from the usual case in this district. The prosecutor has already provided us with snippets of Brady and Giglio material. However, as we explain below, the statements that we have received are without any meaningful context and, while the prosecutors concede they are exculpatory, the snippets we have remain somewhat cryptic.

A.    **Barone's Statements To The Investigators**

The government has informed us pursuant to their Brady obligation that:

> Barone said that he told Piliero that if Piliero gave Barone $500,000, Barone would get rid of the guy in Connecticut for Piliero. Barone also said that Piliero responded that he did not want to know what Barone did. Barone further said that, as to killing the Connecticut guy, Piliero never told Barone to do it, and also never told him not to do it.

This information is not just marginally favorable to the defense. In a contract murder prosecution, in which it is required that the prosecution establish that the

defendant intentionally sought to have someone murdered and that he promised or agreed to pay money for that murder, this is a statement that goes to the very heart of the case. Moreover, the statement was made by Barone, Piliero's co-defendant and the only person who knows what role Piliero did – or did not play – in the case. Most importantly, Barone's statement exonerates Piliero.

It is virtually inconceivable that the cryptic summary of what Barone said reflects the only time Barone spoke to the investigators about Piliero in the context of this case. Indeed, it would have been absurd for the agents to have sent Barone out to record a conversation with Piliero about the case unless Barone had talked repeatedly about Piliero in the almost three weeks between his arrest and the conversation.

We believe that in light of the cryptic out-of-context nature of the exculpatory statement that we have received, we are entitled to full disclosure of what Barone told the agents and the prosecutors about what Piliero did and did not do in connection with this case. Such disclosure would allow us to prepare a defense in a meaningful way. Therefore, we request all reports and handwritten notes that reflect Barone's statements about Piliero (and the circumstances in which those statements were made). We also request that we be informed of everything else that Barone said favorable to Piliero that was not memorialized.

### B.    Statements Made By Barone's Counsel

While we do not know any details, we understand that several sealed proceedings involving Barone have been conducted. Certainly proceedings were conducted on the government's application to detain Barone before trial – either as a danger to the community or as a flight risk (or both). In addition, we understand that proceedings have been held where Barone's attorney sought his release or the

5

modification of his conditions of confinement. It is clear from the Brady material that the prosecutor has provided that on one occasion Barone's attorney addressed himself to the case against Piliero and he did so in a way that exculpated him. Indeed, the counsel's remarks are particularly unusual in that they show that he, in a sealed proceeding and without Piliero's knowledge, made the case that Piliero was innocent. See attachment to the Government's Letter of December 2, 2009 (Exhibit 4).

We do not know the context in which counsel's statements about Piliero were made. It does appear likely that at that proceeding, he had more to say about Piliero. We also believe that it is highly likely that Barone's counsel discussed Piliero and this case in other sealed proceedings. We do not seek access to any information in the sealed proceedings that does not relate to Piliero or this case. Such information can be redacted. However, at the very least, we should be provided with all statements that counsel made favorable to Piliero. We also request that we be made privy to all other records of those proceedings that relate to this case. We finally request that we be permitted to attend all future proceedings relating to Barone and this case. If matters extraneous to the case and Piliero are to be discussed, we will gladly step out.

### C. **The Government's Statements About Barone**

As noted above, we expect that the government will seek to introduce as statements in furtherance of a conspiracy, Fed. R. Evid. 801(d)(2)(E), statements that Barone made about Piliero in recorded conversations with ▮▮▮▮. We do not believe that those statements will be found to be admissible against Piliero. However, in the event we are wrong and they are admitted, we would be permitted to impeach Barone's out-of-court statements pursuant to Fed. R. Evid. 806.

6

In order to secure Barone's detention, it was necessary for the government to show that Barone was a flight risk or a danger to the community. In this case, it is most likely that the government marshaled evidence against Barone to show that he is a danger to the community. We believe that that evidence and the government's statements about Barone and his character amount to damning impeachment material. Therefore, in light of Giglio v. United States, 405 U.S. 150 (1972), we request that evidence of Barone's danger to the community, his prior bad acts, and his character that were part of the sealed detention proceeding and any other sealed proceedings involving Barone be produced to us. We also request that all statements that the government made about Barone at those proceedings, statements qualifying as "admissions by party-opponent" pursuant to Fed. R. Evid. 801(d)(2), be provided to us.

## POINT II

### PURSUANT TO FED. R. CRIM. P. 14, THE COURT SHOULD SEVER PILIERO'S TRIAL FROM HIS CO-DEFENDANT'S

We request that the Court grant Piliero a severance of his case from that of his co-defendant Joseph Barone because (1) overwhelming prejudice would accrue to Piliero in a joint trial due to the potential admission of Fed. R. Evid. 404(b) evidence against Barone, and (2) Piliero is entitled to present the exculpatory testimony of Barone. Rule 14 permits courts to sever defendants' trials if a joint trial "appears to prejudice a defendant." Fed. R. Crim. P. 14. The decision whether to grant a severance is within the discretion of the trial judge. Opper v. United States, 348 U.S. 84, 95 (1954). Although courts generally have expressed a "preference" for joint trials when defendants are indicted together, it is a fundamental axiom that "no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several

defendants in one trial rather than in protracted multiple trials." See United States v. Boscia, 573 F.2d 827, 833 (3d Cir. 1978).

Consistent with these principles, the United States Supreme Court has instructed that a district court should sever cases pursuant to Rule 14 "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). In other words, a severance is warranted where a defendant will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial. See United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988); see also United States v. Villanueva Madrid, 302 F. Supp. 2d 187, 190-91 (S.D.N.Y. 2003) (Buchwald, J.) (granting motion for severance of counts under Rule 14 to avoid undue prejudice).

### A. Introduction Of Rule 404(b) Evidence Against Barone At A Joint Trial Will Unduly Prejudice Piliero

It is most likely in their case against Barone that the government will attempt to introduce evidence of Barone's other crimes or bad acts under Fed. R. Evid. 404(b). A tape recording made by Confidential Informant █████████ at the direction of law enforcement on January 9, 2009, of his meeting with Barone provides the government with a great deal of potential 404(b) evidence against Barone. On the January 9, 2009, recording, Barone discusses not only the murder for hire conspiracy alleged in this case, but also committing with ██████ a panoply of other, totally unrelated crimes and bad acts, including assault, robbery, extortion, home invasion, kidnapping, arson, and murder. A transcript of that conversation is Exhibit 7 to our supporting Affirmation.

8

As described below, the ghoulish detail in which Barone discusses his other crimes and bad acts will severely prejudice Piliero if they are tried together. During his conversation with ███████ on January 9, 2009, Barone states, "I'm still thinking about doing ████ popping that mother fucker... I wanna show you the thing about ████ and ████ kids, I'm thinking this is my thing you know what I'm saying I wanna grab his key, you know there's a lot of shit I wanna show you go over a few scenarios with you you know." (Ex. 7, at 16). Barone then goes on to describe the different "scenarios" he has concocted for ████ and ████ family: "I'll walk right over there myself and just walk up to him and say hey, what's up ████ and just shoot him right in the fuckin' face," (Ex. 7, at 18); "Ain't nobody gonna be doing no shootin' but me. I'm gonna shoot his kid right in front of him," (Ex. 7, at 25); "I'm gonna get gasoline I'm gonna pour the gasoline all in the fuckin' house and then I'll set it on fire after I pop him, cause I'm gonna pop him first," (Ex. 7, at 28); and "WHACK!!, I'll fuckin' hit him right there with that fuckin' shot in the throat it'll be all over," (Ex. 7, at 28).

In addition to explaining his plan to murder ████ and ████ son, Barone also talks about murdering another individual and tells ███████ that he has put himself on the market as a hit man: "The wise guy that I had the problem with at the diner ... I'm gonna take him out too. I just found out where he lives, I just found out where he lives," (Ex. 7, at 21); "I'm trying to man, fuckin' (UI) make some money. And I, I already put it out that I got some, I'm ready to do some hits and so I put the word out," (Ex. 7, at 29).

Finally, Barone laments not being involved in an attack on a woman and an apparent extortion conspiracy wholly unrelated to the allegations in this case: "You

know I wish we could of got that other score and smacked that bitch because that was fuckin' money coming to us right there." (Ex. 7, at 29).

Piliero will be unfairly prejudiced in a joint trial if evidence describing Barone's other crimes and bad acts is admitted under Rule 404(b). The prejudicial spillover that would accrue to Piliero by exposing a jury to this evidence – having absolutely nothing to do with Piliero – could not adequately be contained by any limiting instruction this Court might give the jury.

The Supreme Court has explained that severance is warranted when:

> [e]vidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.

Zafiro, 506 U.S. at 539 (citations omitted).

In certain circumstances, the risk of this prejudice has been limited through instructions to juries regarding the consideration of Rule 404(b) evidence against any other defendant. However, the Second Circuit has noted that "[t]here are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant." United States v. Figueroa, 618 F.2d 934, 944 (2d Cir. 1980) (citation omitted). Given the heinous nature of Barone's statements, particularly the explanation of his cold-blooded scheme to hurt a man's son in front of him in order to cause the greatest amount of psychological damage

possible, it is highly unlikely and unrealistic that any limiting instruction will prevent Piliero from being unfairly prejudiced in the jury's eyes. Because Piliero is charged with conspiring with Barone in alleged criminal activity, the risk that the jury will improperly consider any evidence of Barone's other crimes and bad acts as evidence against Piliero is significant and will in effect deny him a fair trial.

**B. Piliero Is Entitled To Present The Exculpatory Testimony Of Barone**

A severance is also warranted in this case because Piliero is entitled to present the crucial exculpatory testimony of his co-defendant Barone. As explained above, the prosecutor informed us that Barone and his attorney have made statements exculpating Piliero. Such exculpatory testimony is essential to Piliero's defense that, just as Barone has made clear, there never was an agreement between Piliero and Barone to have anyone murdered. The government's entire case relies upon this alleged agreement between Piliero and Barone. To establish this defense, however, it would be critical for Piliero to be able to call Barone as an exculpatory witness.

In Zafiro, the Supreme Court made clear that pursuant to Rule 14, a severance may be required where a defendant seeks to compel the exculpatory testimony of a co-defendant. See Zafiro, 506 U.S. at 539 ("[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."). Furthermore, unlike circumstances where the nature of the potentially exculpatory testimony is unknown, in this case, Barone has provided clear exculpatory statements speaking directly to the heart of the charges against Piliero. Compare United States v. Sherman, 426 F. Supp 85, 92 (S.D.N.Y. 1976) (denying with leave to renew motion to sever based upon, among other things, the failure of the

defendant to provide the nature of her co-defendant's testimony which was claimed to exculpate her), with United States v. Gleason, 259 F. Supp. 282, 284 (S.D.N.Y. 1966) (severing the trial of two co-defendants where oral and written statements had been made by one co-defendant specifically supporting the moving defendant's lack of criminal intent) and United States v. Shuford, 454 F.2d 772 (4th Cir. 1971) (severing trial to allow one defendant to take advantage of the testimony of a co-defendant where that person's testimony would be the only testimony available to rebut the statements of key government witnesses and the specific content of the exculpatory testimony was known and was crucial to the defendant's defense).

In considering a motion to sever based on the exculpatory testimony of co-defendants, this Court must weigh the following four factors:

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment.

United States v. Wilson, 11 F.3d 346, 354 (2d Cir. 1993) (quoting United States v. Finkelstein, 526 F.2d 517, 523-24 (2d Cir. 1975)).

First, there is a "substantially greater likelihood" of Barone's testimony being available if Piliero's trial is severed. "[T]he availability of a severed co-defendant's testimony need not be demonstrated with certainty." See United States v. Gilbert, 504 F. Supp. 565, 572 (S.D.N.Y. 1980) (noting authority in other circuits supporting this proposition, citing Shuford, 454 F.2d at 778, and United States v. Echeles, 352 F.2d 892, 898 (7th Cir. 1965)). Rather the movant should demonstrate "'that there is

a substantially greater likelihood' of the co-defendant's evidence being available if the trials are severed." See id. (quoting Gleason, 259 F. Supp. at 285); see also Gleason, 259 F. Supp. at 284 (stating, "If [the co-defendant] is tried separately and first, he may plead, or be found, guilty. He may choose to testify in his own defense. He may, as the law presumes, be acquitted, whether or not he takes the stand. One way or another, it is possible that he will come to lack the subsequent basis for invoking the privilege").[1]

If Barone is tried and sentenced before Piliero is tried, he could not invoke the Fifth Amendment at Piliero's trial. See United States v. Romero, 249 F.2d 371, 374 (2d Cir. 1957). Regardless of the litigation posture at the time of Piliero's trial, however, there is no doubt that there is a "substantially greater likelihood" of Barone's testimony being available if Piliero's trial is severed.

Second, because Barone is in a unique position to testify about his communications with Piliero, his potentially exculpatory testimony would in no way be cumulative. See Wilson, 11 F.3d at 354. Without Barone's testimony, a jury will be prevented from hearing testimony regarding the substance of Barone's conversations with Piliero concerning the central allegations in the case against Piliero. At the very least, Piliero is entitled to question Barone about the exculpatory statements Barone made to law enforcement agents.

Third, in light of the relatively small dimensions of this case, a severance should not entail heavy burdens of added time and expense. See Gleason, 259 F. Supp. at

---

[1] While Piliero has not provided an affidavit from Barone indicating his willingness to testify, an affidavit from a co-defendant from whom testimony is sought is not a "condition precedent to severance for the purpose of obtaining a co-defendant's exculpatory testimony." Gilbert, 504 F. Supp. at 572.

285. Indeed, the case involves only a few potential witnesses and a handful of recorded conversations.

Fourth, while we can not deny that there is substantial impeachment material about which Barone could be cross-examined based on bad acts, his testimony has to be measured by the evidence at trial. Given the scant evidence to suggest Piliero's involvement in the alleged conspiracy, Barone's exculpatory testimony would not be subject to substantial, damaging impeachment on the basis of inconsistent evidence. See Wilson, 11 F.3d at 354 (noting that substantially all of a co-defendant's proffered testimony was subject to damaging impeachment in light of the evidence corroborating the case against the moving co-defendant).

Thus, Piliero has shown persuasive ground that he needs Barone's testimony; that that need must almost certainly go unsatisfied in a joint trial; and there is a substantially greater likelihood of Piliero using Barone as a witness if they are tried separately. See Gleason, 259 F. Supp. at 284-85. Therefore, Piliero respectfully requests that he be tried separately from Barone pursuant to Fed. R. Crim. P. 14 because of the overwhelming prejudice that would accrue to Piliero in a joint trial, and because Piliero is entitled to present the crucial exculpatory testimony of Barone.

## C. Piliero Should Be Provided With Evidence Of Any Statements That Barone Made Incriminating Himself

In light of what we have been provided by the government, it is clear that Barone spoke to investigators about this case. It is certainly possible that when he did so, he incriminated himself. It is also possible that he made reference to Piliero.

If Barone made statements incriminating himself, the government will no doubt seek to introduce them. If Barone implicated Piliero, then the rule of Bruton v.

14

United States, 391 U.S. 123 (1968) would apply and Piliero could very well have another reason to have his trial severed from Barone's. Therefore, we request that the government be required to provide us with all statements by Barone in which he incriminated himself so that we may be able to evaluate whether the Bruton rule would apply to require a severance.

<h2 style="text-align:center">POINT III</h2>

### PILIERO IS ENTITLED TO LAW ENFORCEMENT AGENTS' HANDWRITTEN NOTES AND FORMAL REPORTS CONCERNING THEIR INTERVIEW WITH HIM

On February 19, 2009, Piliero was interviewed by law enforcement agents. The government provided us with an undated and unsigned typewritten draft report of statements that Piliero allegedly made during that interview (Exhibit 5). On December 16, 2009, we sent a discovery letter to Assistant United States Attorney Kenneth Polite requesting, among other things, that the government provide us with the handwritten notes that the officers who spoke with Piliero made at the time of their interview and any handwritten notes made thereafter about that conversation with Piliero (December 16, 2009 Discovery Request Letter attached to supporting Affirmation as Exhibit 6). We also requested that the government provide us with all formal typewritten FBI or NYPD reports or other reports that were prepared concerning the interview and the dates when those reports were prepared (Id.). The government has not responded to our requests. See McDonald Aff. 18.

We are entitled to all handwritten notes made by law enforcement agents concerning statements that Piliero allegedly made during his interview on February 19, 2009. See, e.g., United States v. Stein, 424 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2006) (granting production of government agents' handwritten notes created during interviews

15

with defendants); United States v. Ionia Mgmt. S.A., No. 3:07CR134, 2007 WL 2298570, *2 (D. Conn. Aug. 3, 2007); United States v. Kofsky, No. 06-392, 2007 WL 1825183, *1 (E.D. Pa. June 22, 2007). The government's production of the undated and unsigned typewritten draft report of statements that Piliero allegedly made during that interview is insufficient. Stein, 424 F. Supp. 2d at 728. Upon a defendant's request, the government must produce "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. 16(a)(1)(B)(ii). Rule 16 "plainly requires production of 'any written record' containing statements made during interrogation and is 'not limited to a typed, formalized statement' or 'a verbatim or near-verbatim transcription.'" Stein, 424 F. Supp. 2d at 728 (quoting United States v. Vallee, 380 F. Supp. 2d 11, 12 (D. Mass. 2005)). Furthermore, the Advisory Committee Notes make clear that "the record requested 'must only be some written reference which would provide some means for the prosecution and the defense to identify the statement.'" Id. (quoting Fed. R. Crim. P. Advisory Committee Notes).

We are also entitled to all formal typewritten FBI or NYPD reports or other reports that were prepared concerning the interview and the dates when those reports were prepared. See Fed. R. Crim. P. 16(a)(1)(B)(ii); see also Doe v. United States, 829 F. Supp. 59, 60 (S.D.N.Y. 1993) (noting that the government's disclosure of an FBI 302 Report to a defendant summarizing an interview between the FBI and that defendant was required under Fed. R. Crim. P. 16(a)(1)(A) to provide the defendant with all of his prior statements).

16

## POINT IV

## PURSUANT TO FED. R. CRIM. P. 7(F), PILIERO IS ENTITLED TO A BILL OF PARTICULARS

Piliero respectfully moves this Court to compel the government to provide particulars with respect to the two counts charged in the indictment. By letter to Assistant United States Attorney Kenneth Polite dated December 16, 2009 (Exhibit 6), we requested that the government provide a bill of particulars. The government has not responded. See McDonald Aff. 18.

Fed. R. Crim. P. 7(f) provides that "[t]he court may direct the filing of a bill of particulars." A 1966 amendment to Rule 7(f) which eliminated the requirement of a showing of cause for a bill of particulars was "designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7(f) Advisory Committee Notes. It is clear that the decision whether to order a bill of particulars is within the discretion of the district court. United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).

The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." Id. at 574. While a bill of particulars is not required where "the information sought by defendant is provided in the indictment or in some acceptable alternate form," it is error for a district court to fail to grant a bill of particulars where it is "vital to [the defendant's]

17

understanding of the charges pending and to the preparation of a defense and [where it] would... prevent[] the Government in its attempt to proceed furtively." Id. at 574-75.

The charges against Piliero are, at best, scantily articulated in the Indictment. The meager discovery material provides little amplification. As described above, the Indictment charges that Piliero conspired with Barone and "others known and unknown" and did travel or cause "another" to travel between New York and Connecticut with the intent that a murder be committed as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value. While the Indictment touches broadly on the elements of the crimes charged, it does not sufficiently apprise Piliero of what actions the government believes he actually took regarding the alleged conspiracy and substantive crime.

The Indictment excludes several key allegations regarding Piliero's alleged role in the alleged conspiracy and substantive crime, including: 1) when Piliero joined the conspiracy; 2) when and where Piliero offered money to another or others; and 3) to whom Piliero offered money. Furthermore, the Indictment is entirely devoid of allegations regarding the alleged "agreement" that is the crux of the government's charges. The Indictment includes no information as to the identity of the parties to the alleged promise or agreement to pay, or what was to be paid and to whom. The Indictment is also deficient in that it does not identify the "others" who are "known" who participated in the alleged conspiracy. Additionally, the Indictment excludes several key allegations regarding the alleged conspiracy and substantive crime, including: 1) the places from, to and through which the travel was to take place; 2) who was to travel in interstate and foreign commerce; 3) when the travel was to take place; 4) who was to be

18

murdered; 5) when the murder was to take place; 6) who traveled between New York and Connecticut; and 7) who caused the travel to take place.

Piliero cannot adequately prepare for trial without answers to these most basic questions about what, exactly, he is charged with doing. Information related to the alleged "agreement" is absolutely critical to Piliero's ability to prepare a defense and receive a fair trial. Because this information is vital to Piliero's understanding of the charges against him and to his preparation of a defense, it is respectfully requested that this Court order the government to provide a bill of particulars setting forth the information requested in our letter dated December 16, 2009 (Exhibit 8). In addition, the government should be required to disclose the identity of any unindicted co-conspirator.

## POINT V

### PILIERO REQUESTS PERMISSION TO MAKE ADDITIONAL MOTIONS THAT MAY BECOME NECESSARY AS A RESULT OF FURTHER DISCOVERY

We anticipate that additional motions may become necessary as discovery in this case progresses. In particular, if the Court grants Piliero's motion for a bill of particulars, or any portion thereof, the information the government is required to provide may necessitate the filing of additional motions. Accordingly, Piliero respectfully requests permission to file such additional motions if and when their necessity becomes apparent.

Dated: February 5, 2010
     New York, New York

Edward A. McDonald

Dechert LLP
Edward A. McDonald (EM4411)
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500